**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____

UNITED STATES OF AMERICA,

                Plaintiff,

                v.

MOISES HERNANDEZ,

                Defendant.

_____

:
:
:
:
:
:
:
:
:
:
:
:

Crim. No. 06-736-5 (RBK)

**OPINION**

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant Moises Hernandez's Motion for a Reduction of Sentence under the First Step Act ("Motion" or "Mot.") (ECF No. 179). For the reasons set forth below, the Court **DENIES** Hernandez's Motion.

## I.    BACKGROUND

Hernandez is an inmate in federal custody at Federal Correctional Institute Ray Brook ("FCI Ray Brook"). (ECF No. 181, "Gov't Opp'n" at 1). On May 7, 2008, Hernandez pleaded guilty to a two-count Superseding Information charging him with (1) conspiracy to distribute crack cocaine, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), in violation of 21 U.S.C. § 846, and (2) use of a firearm in furtherance of a drug trafficking crime that resulted in death, in violation of 18 U.S.C. § 924(c) and (j). (_Id._ at 3). The Court sentenced Hernandez to 330 months' imprisonment on December 19, 2008. (_Id._ at 4).

Hernandez filed this Motion on March 8, 2022. (ECF No. 179). The Government opposed it on December 5, 2022. (ECF No. 181). Hernandez did not reply.

1

## II.      LEGAL STANDARD

Section 3582(c)(1)(A), as amended by Section 603(b) of the First Step Act, provides:

[T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). The changes implemented by the First Step Act's amendment allow prisoners to directly petition the court, as opposed to the Bureau of Prisons ("BOP"), for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i), provided they satisfy the exhaustion requirements first. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 396 (E.D. Pa. 2020).

As such, the first step for a defendant in a motion for a sentence reduction under § 3582(c)(1)(A) is to exhaust any available administrative remedies. Before bringing a motion for reduced sentence on their own behalf, a defendant "must ask the Bureau of Prisons . . . to do so on their behalf, give BOP thirty days to respond, and exhaust any available administrative appeals." *United States v. Raia*, 954 F.3d 594, 595–96 (3d Cir. 2020). Thirty days after submitting the request or after receipt of an adverse decision, whichever is earlier, the defendant may move for compassionate release in the district court. *Id.* At the second step, a defendant must show that "(1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Rivera*,

Crim. No. 06-849, 2022 WL 1284717, at *1 (D.N.J. Apr. 29, 2022) (*quoting United States v. Pabon*, 458 F. Supp. 3d 296, 300 (E.D. Pa. 2020)).

"Extraordinary and compelling reasons" are not defined by statute. Rather, Congress tasked the United States Sentencing Commission with providing a definition. Congress's only instruction to the Commission was that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). The Commission provided such a definition in U.S.S.G. § 1B1.13 cmt. n.1(A)–(D). There, the Commission explained that extraordinary and compelling reasons exist where there is:

> (A) terminal illness diagnoses or serious medical, physical or mental impairments from which a defendant is unlikely to recover, and which "substantially diminish" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence; or (C) two family related circumstances: (i) death/incapacitation of the only caregiver for the inmate's children or (ii) incapacitation of an inmate's spouse, if the inmate is the spouse's only caregiver.

U.S.S.G. § 1B1.13, cmt. n.1(A)–(C). In subsection (D) of the Application Note to U.S.S.G. § 1B1.13, there is a catchall provision that gives the BOP Director the authority to determine if "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the other three categories. The definition of "extraordinary and compelling reasons" has not been updated since the First Step Act's enactment.

The Third Circuit recently held that courts are not bound by Section 1B1.13's definition of "extraordinary and compelling reasons" when considering prisoner-initiated motions. *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021), *cert. denied*, 142 S. Ct. 1446 (2022). Nonetheless, Section 1B1.13 "still sheds light on the meaning of extraordinary and compelling reasons" and can provide a useful guide for courts considering compassionate release motions.

*Id.* at 260 ("[T]he District Court did not err when it consulted the text, dictionary definitions, and the policy statement to form a working definition of 'extraordinary and compelling reasons.'").

## III.  DISCUSSION

The Court notes at the outset that the parties dispute whether Hernandez properly exhausted his administrative remedies. Hernandez alleges he filed a compassionate release request with the FCI Ray Brook Warden more than thirty days before filing his Motion, but he never received a response. (Mot. at 13–14). The Government contends Hernandez filed no proof that he made any such request with BOP. (Gov't Opp'n at 5). Because the Court denies the Motion for other reasons, for the purposes of this Motion, the Court assumes without deciding that Hernandez exhausted his administrative remedies.

Thus, the Court moves to the second step of the analysis. We find that Hernandez has not shown that extraordinary and compelling reasons warrant reducing his sentence.

### A.  Extraordinary and Compelling Reasons

Hernandez asserts that the COVID-19 pandemic constitutes an extraordinary and compelling reason warranting compassionate release. (Mot. at 17–19). He claims that his asthma and neuropathy put him at a greater risk of contracting COVID-19 and suffering more severe symptoms if he becomes infected. (*Id.* at 19). He did not mention in his Motion that he is fully vaccinated. (*See generally id.*); (Gov't Opp'n at 15); (ECF No. 181-2).

The mere "existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner[.]" *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020). Most defendants who successfully move for compassionate release related to COVID-19 through § 3582(c)(1)(A) demonstrate that: (1) they are particularly vulnerable to developing severe

4

illness from COVID-19 due to age or a medical condition(s); and (2) there is "an actual, non-speculative risk of exposure to COVID-19 in the facility where [they are] held." *United States v. Somerville*, 463 F. Supp. 3d 585, 597–98 (W.D. Pa. 2020).

Hernandez has failed to show he faces an actual, non-speculative risk of exposure to COVID-19 at FCI Ray Brook. There are currently zero active cases among FCI Ray Brook inmates and only three among staff members. *Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 16, 2022). Since the vaccine became available, FCI Ray Brook has fully vaccinated 639 inmates. *Id.* Additionally, FCI Ray Brook has fully vaccinated 143 staff members, and that number does not include any staff who may have received their vaccine in the community, rather than a BOP facility. *Id.*

The vaccination of inmates and staff greatly reduces the risk of COVID-19 exposure and infection within the facility. *See United States v. Martinez*, No. CR 16-503 (KM), 2022 WL 1320618, at *4 (D.N.J. May 2, 2022) ("The likelihood of a COVID-19 infection has also been greatly reduced by vaccination of [the defendant] and others at the prison."). There have been no COVID-related inmate or staff deaths at FCI Ray Brook since the beginning of the pandemic. *Coronavirus*, https://www.bop.gov/coronavirus/. Hernandez himself is fully vaccinated against COVID-19. (Gov't Opp'n at 15); (ECF No. 181-2). Hernandez's argument that the pandemic presents an ongoing risk to him due to his incarceration, (Mot. at 15–19), applies equally to all incarcerated people and does not constitute an extraordinary and compelling reason for compassionate release.

Hernandez has also not established that his asthma and neuropathy create risks in the face of COVID-19 that are so extraordinary and compelling they justify compassionate release. According to the Centers for Disease Control & Prevention ("CDC"), moderate to severe asthma

may raise the risk of severe illness due to COVID-19. *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 16, 2022). Even so, courts in this District have consistently found that asthma does not constitute an extraordinary and compelling reason to warrant early release or a reduced sentence during the COVID-19 pandemic. *See, e.g., United States v. Reed*, Crim. No. 13-787-3, 2021 WL 631921, at *3 (D.N.J. Feb. 18, 2021) (collecting cases in the District of New Jersey where courts denied compassionate release to inmates with asthma). Further, neuropathy is not listed as a neurological condition that can lead to increased risk of severe COVID-19 illness. *See People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. As such, neuropathy does not constitute an extraordinary and compelling reason justifying compassionate release either.

Again, most importantly, Hernandez is fully vaccinated against COVID-19. (Gov't Opp'n at 15); (ECF No. 181-2). He is therefore substantially protected from COVID-19 infection and, in the case of another breakthrough infection, from severe symptoms. *See United States v. Williams*, No. CR 11-00421-SDW-1, 2022 WL 950994, at *2 (D.N.J. Mar. 29, 2022) ("If a defendant is vaccinated, many courts have found that there is an insignificant likelihood that the defendant 'will contract COVID-19 and become seriously ill.'") (collecting cases). The Third Circuit has recognized in an unpublished decision that "[g]iven vaccine availability, a prisoner likely will not be able to prove that his personal risk of serious illness from COVID-19 is an extraordinary and compelling reason for release unless he can convincingly show that he is 'unable to receive or benefit from a vaccine' or that he 'remain[s] vulnerable to severe infection, notwithstanding the vaccine.'" *United States v. Estevez-Ulloa*, Crim. No. 21-2432, 2022 WL

1165771, at *2 (3d Cir. Apr. 20, 2022) (citing *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022)). Hernandez has not made this showing here. Furthermore, booster vaccines are available to all BOP inmates. *COVID-19 Vaccine Guidance 6*, Fed. Bureau of Prisons, at 1, 21, https://www.bop.gov/resources/pdfs/covid_19_vaccine_guidance_v17.pdf.

The Court does not wish to diminish Hernandez's concern for his health or the seriousness of the COVID-19 pandemic for those in custody. Still, Hernandez has not shown that his circumstances warrant release. Despite his asthma, he has failed to show that he is at a uniquely high risk for grave illness from COVID-19 given his vaccination status and the availability of boosters. What's more, he has not proven that there currently exists an actual, non-speculative risk of exposure at FCI Ray Brook given its high vaccination rate and low incidence rate of COVID-19 within the facility. Thus, the Court finds there are not extraordinary and compelling reasons to justify reducing Hernandez's sentence or granting his early release.

**B.      Section 3553(a) Factors**

An analysis of the § 3553(a) factors further supports denying Hernandez's motion. In considering whether to reduce a defendant's sentence, a court must look to the factors contained in 18 U.S.C. § 3553(a). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

Hernandez argues that he has improved and rehabilitated himself while incarcerated. (Mot. at 34–37). He also argues that he was technically sentenced on drug trafficking charges (not for murder), has spent more than a third of his life in prison, has matured into a responsible adult, and feels deep remorse for his actions. (*Id.*). Because of this, Hernandez argues "deterrence and public protection are no longer strong § 3553(a) factors weighing in favor of continued detention." The Government, on the other hand, argues that Hernandez remains a danger to the community because of his significant criminal record and that his crime is significant enough to warrant denying the Motion. (Gov't Opp'n at 20–21). Specifically, the Government argues that Hernandez "shot two people in cold blood, killing one." (*Id.* at 20).

Although the Court commends Hernandez for working to rehabilitate himself and change his life while in prison, we agree with the Government that the § 3553(a) factors weigh against release. The nature and circumstances of Hernandez's crime involve murder. Hernandez has an extensive adult criminal record. (*See id.* at 21). The Court is also mindful of the need for the sentence imposed to protect the public from future violence and to afford adequate general deterrence. Moreover, the Court believes that the present sentence is necessary to provide Hernandez with just punishment and specific deterrence. Accordingly, the Court finds that the § 3553(a) factors weigh against Hernandez's release.

## IV.   CONCLUSION

For these reasons, the Court **DENIES** Hernandez's Motion (ECF No. 179). An appropriate order follows.

Dated: December 19, 2022                    /s/ Robert B. Kugler
                                            ROBERT B. KUGLER
                                            United States District Judge