NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim. No. 06-736 (KMW) |
| Plaintiff, | **OPINION** |
| v. | |
| MOISES HERNANDEZ, | |
| Defendant. | |

**WILLIAMS**, United States District Judge:

**THIS MATTER** comes before the Court upon *pro se*[1] Defendant Moises Hernandez's ("Hernandez") Motion for a Reduction of Sentence pursuant to the First Step Act, and 18 U.S.C. § 3582(c)(1)(A), ("Compassionate Release"). *See* ECF No. 185. The Court having considered the parties submissions, and for the reasons set forth below, the Court **DENIES** Hernandez's Motion.

## I.    BACKGROUND

Hernandez is an inmate in federal custody at United States Penitentiary Pollock. *See* Reply. On July 8, 2006, Hernandez shot and killed one person and injured another during a dispute over "poor quality" crack cocaine. *See* Presentencing Report, ("PSR") ¶¶ 41-42, 45-46, 51, 61. The dispute arose when Cesar Severino provided Hernandez with crack cocaine of "poor quality" that resulted in Hernandez losing customers. *Id.* at ¶¶ 41, 51, 59. Severino invited Hernandez to meet to resolve the issue, where ultimately Hernandez shot and killed Severino and injured another.[2] Two eyewitnesses eventually came forward and identified Hernandez as the person running from

---

[1] Hernandez was previously represented by counsel in this matter during his guilty plea, sentencing, and appeal. *See* ECF No. 3, (Appointing Federal Public Defender); ECF No. 94, (Substitution of Attorney); ECF No. 129, (Notice of Appeal to the 3rd Circuit signed by Thomas J. Gossé, Esq.).

[2] Hernandez says he shot Severino in self-defense after being slapped in the face. *Id.* ¶¶ 72-73.

the scene of the shooting, and later the injured man identified Hernandez as the shooter. *Id.* at ¶¶ 49, 52, 56. Moreover, Hernandez himself confessed to the crime on two separate occasions: first to the DEA agents that interviewed Hernandez shortly after his arrest, then to the Camden City Police Department detectives. *Id.* ¶¶ 59-82. On October 25, 2006, a federal grand jury issued a superseding indictment charging Hernandez with conspiracy to distribute and possession with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of crack cocaine, in violation of 21 U.S.C. § 841(a) and (b)(1)(A). *Id.* ¶¶ 1-2, 4-7, 9. On May 7, 2008, Hernandez plead guilty to Counts 1 and 2 of a Superseding Information: Count 1, conspiracy to distribute crack cocaine, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), in violation of 21 U.S.C. § 846; and Count 2, use of a firearm in furtherance of a drug trafficking crime that resulted in the death of Cesar Severino, in violation of 18 U.S.C. § 924(c) and § 924(j). *Id.* ¶¶ 16-17. On November 18, 2008, Hernandez filed a motion to withdraw his guilty plea, which was denied on December 19, 2008. *See* ECF Nos. 120, 126.

At the sentencing hearing, the Court adopted the PSR and concluded that Hernandez was a career offender with respect to Count 1, with a Guideline Offense Level of 32 and a Criminal history Category of VI. *See* ECF No. 138; PSR ¶¶ 175. His criminal history category was impacted by two prior convictions for possession with intent to distribute within 1,000 feet of a school, which are considered felony convictions for controlled substance offenses for purposes of U.S.S.G. §§ 4B1.1(a) and 4B1.2(b). *See* PSR ¶ 92(5). Ultimately, the Court sentenced Hernandez to 330 months incarceration, 210 months for Count 1 and a consecutive term of 120 months for Count 2. *See* ECF No. 125. Since then, Hernandez has filed several motions regarding his sentence: on December 29, 2008, he appealed his sentence to the Third Circuit, which affirmed the conviction and sentence; on October 4, 2010, the Supreme Court denied his petition for a *writ of*

2

*certiorari*, (*see Hernandez v. United States*, 562 U.S. 938 (2010)); on June 21, 2017, he filed a motion pursuant to 28 U.S.C. § 2255, which was denied on September 27, 2019 without issue of a certificate of appealability, (*see* Civil Docket No. 17-04582); on August 31, 2020, Hernandez filed a motion for a reduction in sentence pursuant to Section 404 of the First Step Act, which was denied on December 19, 2022; and finally, on March 8, 2022, Hernandez filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the COVID-19 pandemic, which was denied on December 19, 2022. *See* ECF Nos. 128, 175, 179, 182-84.

On April 23, 2024, Hernandez filed his current Motion titled "Motion for Reduction of Sentence Under First Step Act 18 U.S.C. 3582(c)(1)(A)." ECF No. 185. On May 11, 2024, the Government opposed Hernandez's Motion, (ECF No. 187), and Hernandez replied on July 3, 2024, (ECF No. 189). With the Motion now ripe, the Court can now move to adjudicate it.

## II.   LEGAL STANDARD

District courts generally have limited authority to modify a federally-imposed sentence once it commences, however, the First Step Act allows prisoners to directly petition the sentencing court for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) for "compassionate release" where there exists "extraordinary and compelling reasons" to reduce a sentence. *United States v. Hare*, No. 18-588, 2021 WL 238349 at *2 (D.N.J. Jan. 25, 2021). The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the

3

factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> (i) extraordinary and compelling reasons warrant such a reduction[.]

18 U.S.C. § 3582(c)(1)(A)(i).

Prisoners must satisfy the administrative exhaustion requirements laid out in the statute. *United States v. Alexander*, No. 19-32, 2020 WL 2507778, at *3 (D.N.J. May 15, 2020). To exhaust administrative remedies, a defendant must present his request for compassionate release to the warden of his prison. *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020). Thirty days after submitting the request or receiving a denial, whichever is earlier, the defendant may move for compassionate release in the district court. *Id.*

A court may reduce a defendant's term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]"    18 U.S.C. § 3582(c)(1)(A). The sentencing factors under 18 U.S.C. § 3553(a) require courts to consider, among other things, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant. *See* 18 U.S.C. § 3553(a). "Compassionate release is discretionary, not mandatory; therefore, even if a defendant is eligible for it, a district court may deny compassionate release upon determining that a sentence reduction would be inconsistent with the § 3553(a) factors." *United States v. Alexander*, No. 23-1011, 2023 WL 4198042, at *1 (3d Cir. June 27, 2023). The defendant bears the burden of showing that he is entitled to compassionate release. *United States v. McNair*, 481 F. Supp. 3d 362, 365 (D.N.J. 2020).

"Extraordinary and compelling reasons" are not defined by statute. Rather, Congress tasked the U.S. Sentencing Commission (the "Commission") with providing further guidance. Congress's only instruction on this point was that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). The Commission amended the Guidelines effective November 1, 2023. *See United States v. Tobolsky*, No. 21-303, 2024 WL 323476, at *2 (D.N.J. Jan. 29, 2024). As part of the amended Guidelines, the Commission updated a policy statement regarding when a reduction in a term of imprisonment may be appropriate under 18 U.S.C. § 3582(c)(1)(A). *See* U.S.S.G. § 1B1.13 (the "Policy Statement"). The Policy Statement states in relevant part:

> (a)    In General.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> > (1)(A) extraordinary and compelling reasons warrant the reduction; . . .
> > (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> > (3) The reduction is consistent with this policy statement.

The Policy Statement further provides that a nonretroactive change in law can be considered an extraordinary and compelling reason to warrant a sentence reduction for an "[u]nusually [l]ong [s]entence," as follows:

> if a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).[3]

## III.    DISCUSSION

Hernandez argues that his sentence should be reduced because: (1) the First Step Act's provision regarding "unusually long sentences" is applicable to his case; (2) his sentence reflects an unwarranted disparity among others similarly situated; and (3) the application of Career Offender Enhancement to his sentence was "erroneous." *See* Mot. for Comp. Release at 17, 19, 26. He further asserts that he has achieved significant rehabilitation and completed many programs, including receiving his G.E.D., and that he has accepted full responsibility for his actions. *See* Reply 1-2. The Court has duly considered Hernandez's arguments and finds that he has not established that these reasons merit a reduction of his sentence.[4]

Pursuant to the First Step Act, a defendant seeking compassionate release must show that he has satisfied the procedural prerequisites for judicial review and that compelling and extraordinary reasons justify release. *United States v. Herd*, No. 18-596, 2025 WL 1937602 at *2 (D.N.J. Jul. 15, 2025). Here, Hernandez asserted in his Motion that he had exhausted his administrative remedies, and attached to his reply is a rejection of his compassionate release request from the Warden dated April 11, 2024. *See* Reply. The current motion was promptly filed on April 23, 2024. Therefore, the Court finds that Hernandez exhausted his administrative remedies and permits the Court to proceed to the second step of the analysis.

---

[3] Other policy statements include types of medical conditions, both physical and cognitive, as well as other conditions related to the prisoner's age and family circumstances that may also be considered "extraordinary and compelling" reasons. *See Hare*, 2021 WL 238349 at *3. Hernandez does not assert the applicability of any other policy statements; therefore, such statements will not be addressed in this Opinion.

[4] "Put simply, the First Step Act does not require a district court to accept a movant's argument that evidence of rehabilitation or other changes in law counsel in favor of a sentence reduction. Nor does the First Step Act require a district court to make a point-by-point rebuttal of the parties' arguments. All that is required is for a district court to demonstrate that it has considered the arguments before it." *United States v. Concepcion*, 597 U.S. 481, 502 (2022).

### a. Extraordinary and Compelling Reasons

First, the Court will address Hernandez's assertion that his sentence is "unusually long" and therefore presents an "extraordinary and compelling reason" to justify compassionate release. In this case, Hernandez has served seventeen years of his sentence, which he asserts is "unusually long and harsh" pursuant to the "814 Amendment," and that other courts have released prisoners early with similar offenses. Mot. for Comp. Release at 18-19. Specifically, Hernandez points to *United States v. Salliey*, No. 10-298, 2023 WL 1970491 (D. Md. Feb. 13, 2023), where compassionate release was granted.

The Court can easily distinguish between the facts of *Salliey* and Hernandez's matter: Salliey was sentenced to 204 months imprisonment followed by five years of supervised release after pleading guilty to one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) after officers arrested Salliey and searched his vehicle where 47 gelcaps of heroin and a 9mm handgun were recovered. *Salliey*, 2023 WL 1970491 at *1. Most notably, the court in *Salliey* emphasized that Salliey's "relatively young age at the time of his prior offenses and his entirely nonviolent record reduce the weight of his criminal history, suggest[s] that a prolonged sentence may not be necessary to protect the public." *Id.* at *4. In stark contrast, Hernandez's prior history is extensive and includes a number of violent offenses. *See* PSR ¶¶ 112-150. Further, Hernandez is serving his current sentence because he killed a person and injured another over a drug dispute. *Id.* ¶ 145. Thus, the *Salliey* case is wholly inapposite to Hernandez's case.

Further, Hernandez does not demonstrate that his sentence is "unusually" long as applied to his particular offenses. While he does not provide any examples of sentences of others to demonstrate his sentence is "unusually" long, the Government notes the average sentence of 14

7

offenders with the same criminal history category sentenced under U.S.S.G. § 2D1.1 was approximately 162 months during the years 2019 to 2023, (noting that Hernandez was given an additional consecutive 10 years to his sentence for the use of a firearm resulting in death in furtherance of a drug trafficking offense). Opp. at 23. For the years of 2020-2024, the Judiciary Sentencing Information, ("JSIN"), reflects that a total of four defendants whose primary guideline was U.S.S.G. § 2D1.1 who did not receive substantial assistance departures were sentenced to on average 151 months, and the median length imposed was 160 months. *See Judiciary Sentencing Information*, United States Sentencing Commission at https://jsin.ussc.gov/analytics/saw.dll?Dashboard (last accessed on Aug. 18, 2025).

Hernandez's example—the *Sailley* case—as to why his case is "unusually long" is not applicable to his circumstances, and given the data provided by the Government and from JSIN, the Court cannot find that there is a "gross" difference in length between Hernandez's imposed sentence and the sentences received by the similarly situated.

Second, Hernandez asserts that his sentence creates a gross disparity, urging the Court to consider three cases: *United States v. Clark*, No. 11-30-2, 2020 WL 4260824 (E.D. Wis. Jul. 23, 2020), *United States v. Brooks*, No. 7-20047, 2020 WL 2509107 (C.D. Ill. May 15, 2020), and *United States v. Redd*, 444 F. Supp. 3d 717, (E.D. Va. 2020). *See* Mot. for Comp. Release at 26-27. These cases are not comparable to Hernandez's case, nor do these cases show that Hernadez's sentence is a gross disparity in comparison.

For instance, in *United States v. Clark*, where the court denied the motion for compassionate release, Clark was convicted of twelve counts involving armed robbery and six 18 U.S.C. § 924(c) firearm offenses, receiving a sentence of 300 months imprisonment. *Clark*, 2020 WL 4260824 at *1. The court in *Clark* noted that the provisions of § 924(c) had been amended by

Congress to prevent the "stacking" of multiple § 924(c) charges in a single indictment to enhance a sentence, and that despite that change in law, the court "ha[d] no grounds on which to reduce the sentence that was ultimately handed down." *Id.* at *2, 4

Here, Hernandez's case does not involve any "stacked" § 924(c) charges, the prior charges that influenced the application of career offender enhancement in this case were based on Hernandez's prior convictions related to distributing crack cocaine near a school. *See* PSR ¶¶ 109, 123, 139, 142. Moreover, Hernandez was involved in violent crimes, unlike Clark. *Id.* ¶¶ 112-150.

In *United States v. Brooks*, the court granted compassionate release to Brooks during the COVID-19 pandemic. Brooks was sentenced to 274 months for four violations of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) while on pretrial release, plus a consecutive term for possessing a firearm as a felon. *Brooks*, 2020 WL 2509107 at *1. Brooks was 45 years old at the time, with "severe, chronic asthma," high blood pressure, morbid obesity, and was recovering from bowel obstruction surgery, when the COVID-19 outbreak began. *Id.* Additionally, Brooks' institution reported over 50% of the inmates that had been tested in the facility were testing positive for COVID-19 infection. *Id.* at *6. The court found that, while the mere presence of COVID-19 in a particular facility alone could not justify compassionate release, a serious outbreak of COVID-19 in an institution that is unable to contain the outbreak, along with a prisoner's significant and serious medical conditions, could be sufficient for the court to find release warranted. *Id.* at *5

Here, Hernandez is not seeking release due to a serious institutional outbreak of COVID-19 or other communicable disease, nor has he alleged experiencing any significant or serious health conditions for the Court to consider.

Moreover, the holding in "*Redd*" that Hernandez urges the Court to consider is inapplicable to his case. In *United States v. Redd*, Redd was sentenced to 603 months of imprisonment for three completed bank robberies, an attempted fourth bank robbery, and three gun-related charges. *Redd*, 444 F. Supp. 3d at 718. At the time of his motion for compassionate release, he had served 23 years of his sentence and was 64 years old. *Id.* Similar to Clark, Redd had three "stacked" § 924(c) charges which resulted in 45 years being added to his sentence as opposed to 15 years after the passage of the First Step Act. *Id.* The court in *Redd* ultimately granted compassionate release, holding that "a court may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)," and that the disparity from the "stacking" of Redd's § 924(c) charges from the time of his sentencing, in comparison to the sentencing Redd would have been subject to in 2020, was "extraordinary and compelling" enough to warrant a sentence reduction. *Id.* at 727. Further, when analyzing Redd's criminal history, the *Redd* court noted that he only had a "relatively minor, non-violent one," and that he did not constitute a danger to the safety of others or the community. *Id.* at 728.

Here, again, Hernandez's case does not involve any "stacked" § 924(c) charges, and he has a criminal history that includes acts of violence. *See* PSR ¶¶ 109, 112-150. Further, *Redd* was decided prior to the Sentencing Commission promulgating its Policy Statement, and the Third Circuit's binding precedent in *United States v. Rutherford*, 120 F.4th 360, 372 (3d Cir. 2024), discussed further below.

Third, Hernandez asserts that there have been "changes in the law," as related to his sentencing. In this vein, he argues that the application of Career Offender Enhancement to his sentence was "erroneous" because the Third Circuit in *Chang-Cruz v. AG United States*, 659 Fed.

App'x 114 (3d Cir. Aug. 24, 2016), held that a New Jersey conviction for controlled substance violations near a school was not an "aggravated felony drug trafficking offense," thus this "change in law" would require this Court to resentence him pursuant to a Criminal History Category V, without the application of Career Offender Enhancement. Mot. for Comp. Release at 25-26.

*Chang-Cruz* is a nonprecedential decision by the Third Circuit that determined that a conviction pursuant to N.J.S.A. § 2C:35-7, (possession with intent to distribute within 1,000 feet of a school, the same conviction that elevated Hernandez's career offender status), did not qualify as "aggravated felonies" for immigration removal purposes. *See Terry v. United States*, No. 17-2673, 2019 WL 4051879 at *3 (D.N.J. Aug. 27, 2019). "Unlike immigration law, the Sentencing Guidelines calculation of criminal history points includes a wide variety of prior convictions, which do not need to have been 'aggravated felonies.'" *Id*. Thus, *Chang-Cruz* is not analogous to Hernandez's matter. Further, the Third Circuit has held explicitly that N.J.S.A. § 2C:35-7(a) qualifies as a "controlled substance offense" pursuant to U.S.S.G. § 4B1.2. *Id*. (citing *United States v. Lampley*, 723 F. App'x 152, 154 (3d Cir. 2018).

The Court notes that *Chang-Cruz* does not represent a "change" in the law that would be considered pursuant to the First Step Act, (which is applicable to changes in laws as a result of Congress passing legislation regarding penalties to various offenses). Rather, the holding in *Chang-Cruz*, (or any decision made by a Judge), is a judicial decision that can impact how an existing law is interpreted by courts going forward. Nevertheless, even if there was a relevant "change" in law, any nonretroactive changes cannot be regarded as an "extraordinary and compelling reason[]," requiring a sentence reduction pursuant to the Third Circuit's holdings in *United States v. Rutherford*, which analyzed the modification of § 924(c) by the First Step Act and the Policy Statement changes made by the Commission as it relates to U.S.S.G. § 1B1.13(b)(6).

*See United States v. Resto*, No. 2-684, 2024 WL 5249246 at \*5-6 (D.N.J. Dec. 30, 2024). The Third Circuit made it clear that where "Congress has already taken retroactivity off the table, . . . [the court] cannot rightly consider it." *Rutherford*, 120 F.4th at 378. The Third Circuit's holding is binding upon this Court, and thus the Court would not be able to consider a "change in law" unless Congress explicitly permits such a change to apply retroactively.

Importantly, a challenge to the validity of the sentence, as Hernandez asserts here regarding the "erroneous" application of the Career Offender Enhancement, is more appropriately brought through appeal or through a motion pursuant to 28 U.S.C. § 2255. *See* 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."). Accordingly, the Court finds that Hernandez has failed to satisfy his burden of establishing that "extraordinary and compelling reasons" justify a reduction of his sentence.

**b. The § 3553(a) Factors**

While the Court need not evaluate the § 3553(a) factors where a defendant, as here, fails to demonstrate "extraordinary and compelling reasons," the Court will nonetheless address those factors because they provide an independent basis for denial of the instant application for compassionate release. *See United States v. Babbs*, No. 15-195, 2023 WL 4686323, at \*5 (D.N.J. July 21, 2023). The Court finds that the § 3553(a) factors weigh against Hernandez's request for compassionate release. The § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—
     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
     (B) to afford adequate deterrence to criminal conduct;
     (C) to protect the public from further crimes of the defendant; and
     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    . . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

18 U.S.C. § 3553(a). Here, a sentence reduction would be inconsistent with the § 3553(a) factors.

The nature and circumstances of the offense leans in favor of denying Hernandez's motion. Hernandez shot and killed a man, and injured another, in a dispute over the quality of crack cocaine that was given to him. It is a particularly violent crime that resulted in irreversible consequences. Hernandez's history also weighs against early release, given his extensive criminal history that spans both his juvenile and adult years. *See* PSR ¶¶ 112-150. On the other hand, the characteristics of Hernandez as he presents to the Court today, shows someone who accepts responsibility for the pain and hurt he caused, as well as extensive efforts to rehabilitate himself through engaging in educational programs and obtaining his G.E.D.[5] *See* Reply. The Court commends Hernandez on his dedication to self-improvement and hopes he will continue to make great strides in his development as he prepares to return to the community in the future.

However, the other factors do not weigh in favor of Hernandez's request. A reduction in sentence would fail to "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense," in that Hernandez's offense was serious and violent,

---

[5] While these efforts are commendable, the Court must also note that Congress has determined that "rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason," 28 U.S.C. § 994(t), precluding the Court's ability to provide compassionate release on this basis without additional factors to weigh in favor of release.

and the sentence imposed was at the lowest end of the recommended guideline range at the time. *See* PSR ¶ 175. Reducing Hernandez's sentence would also fail to "afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant," in that, as the Court has mentioned, Hernandez's criminal history is quite extensive, and his record reflects that he has struggled in the past to maintain compliance while on probation. *Id.* ¶¶ 125, 138, 141. Further, the Court must be mindful that "early release [c]ould send the wrong message that serious narcotics offenses may not result in significant incarceration, and that early release is possible even absent compelling justification. Such a precedent would undermine," the purpose of deterrence. *Herd*, 2025 WL 1937602 at *4.

Finally, with respect to § 3553(a)(6), the Court will not reiterate its prior discussion as it relates to Hernandez's assertion that his sentence represents a "gross disparity" among other similarly situated defendants. It is sufficient to state that Hernandez was unable to carry his burden on this factor. *See supra* at 8-10.

Accordingly, the Court finds that the § 3553(a) factors weigh against a reduction of Hernandez's sentence. Therefore, Hernandez's Motion for a Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) must be denied.

## IV.    **CONCLUSION**

For the reasons set forth above, Hernandez's Motion for a Reduction of Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), (ECF No. 185), is **DENIED**. An Order consistent with this Opinion will be entered.

Dated: August 25, 2025

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE